**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

PARNELL R. MAY                                                                    PLAINTIFF

VS.                              NO.  4:21-cv-255 LPR-PSH

TIMS, CONNERS, et al.                                                    DEFENDANTS

**BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

## I.        INTRODUCTION

Plaintiff filed the instant case alleging constitutional injury and a right to recover from the

Pulaski County Defendants under 42 U.S.C. § 1983 for alleged injuries he claims to have suffered

during his incarceration in the Pulaski County Regional Detention Facility ("PCRDF"). Plaintiff

claims that Defendant Deputy Tims retaliated against him and subjected him to excessive force.

Plaintiff also claims that Defendant Sgt. Connors failed to protect him.

There remain no material issues of fact. Plaintiff cannot provide proof beyond bare

accusations that Defendants subjected him to a deprivation of his constitutional rights. Defendants

are therefore entitled to summary judgment. Even taking the facts in a light most favorable to the

Plaintiff, Defendants are entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

## II.        STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of

factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.

Ct. 2548, 91 L. Ed. 2d 265 (1986). It is not "a disfavored procedural shortcut," but is instead the

"principal tool by which factually insufficient claims or defenses [can] be isolated and prevented

1

from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. See *Schmidt v. Des Moines Pub. Sch.,* 655 F.3d 811, 819 (8th Cir. 2011).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . " *Id*. at 247-48. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Id.* at 252.

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)), cert. denied, 132 S. Ct. 1144, 181 L. Ed. 2d 1018 (2012).

"[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative

2

evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted).

## III.    ARGUMENT

### A.    Pulaski County Defendant Deputy Tims did not retaliate against Plaintiff for filing a PREA complaint.

Plaintiff alleges that he was subjected to excessive force in retaliation for filing a PREA complaint against Deputy Tims. Specifically, Plaintiff alleges:

> … I Parnell May was exposed to sexual harassment by the Deputy Tims on March 20th 2021 and I did manage to make a report against the Deputy Tims that very night. The next morning I was exposed to the same perpetrator of the sexual harassment, the Deputy Tims against me where fore I protested his very presence around me because I was very uncomfortable and afraid with his presence "anywhere near me" in my sight and over my welfare and life the deputy Tims opened the food trap door of the cell room that I was in the food trap hole is about 5 x 15 inches long accordingly I stuck my left leg out of the 5X9 inch food trap door hole, as protest for the deputy Tims to have to call his superiors for assistance in addressing the issue of my left leg being stuck out the 5 X 15 inch food trap door hole. Subsequentially the Deputy Tims maliciously, recklessly, intentionally inflected excessive unnecessary physical force against I Parnell May. I was injured and suffered pain in my left leg, knee and back after the blatant actions of the Deputy Tims by inflicting excessive unnecessary physical force against I Parnell May... Doc. No. 2, page 2.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the Defendants acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327,

3

106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, May must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir.2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927–28 (8th Cir.2002)). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for "the exercise of a constitutionally protected right." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir.2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206–07 (8th Cir.1990)).

The Eighth Circuit recognizes the First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures. *Dixon v. Brown*, 38 F.3d 379, 379-380 (8th Cir. 1994)(citing *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989)). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028-1029 (8th Cir. 2007)(citing *Dixon v. Brown,* 38 F.3d 379, 379 (8th Cir.1994)). Thus, Plaintiff's use of the PREA complaint procedure in place within PCRDF would be protected activity under the First Amendment.

However, Plaintiff fails to meet his burden of proof as to the remaining elements of his claim for retaliation. Plaintiff must also prove the second element, that "the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the [protected] activity," to be successful on his claim. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). In this case, Plaintiff alleges that Deputy Tims subjected him to an excessive use of

4

force on March 21, 2021, the next day after he filed a PREA Complaint against Deputy Tims. However, it is clear that Plaintiff was not chilled from continuing protected activity, as he proceeded to file approximately 9 requests/grievances pertaining to his PREA complaint over the course of approximately 30 days following the March 21, 2021 alleged excessive force incident. See Statement of Indisputable Material Facts, Exhibit A2, Requests and Grievances, page 246-251, 261, 331.

In addition to proving the other elements of retaliation, Plaintiff must prove that he would not have been subjected to the use of force "but for an unconstitutional, retaliatory motive." *Goff*, 7 F.3d at 738. See also, *Orebaugh v. Caspari*, 910 F.2d 526, 529 (8th Cir.1990) (Heaney, J., concurring and dissenting) ("To prevail on his retaliation claim, [the prisoner] has the concededly heavy burden of showing that the prison officials who disciplined him had an impermissible motive for doing so, and that but for this impermissible motive, the disciplinary charges would not have been brought"); *Cf. Pletka v. Nix*, 957 F.2d 1480, 1483 (8th Cir.) (en banc)(official actions taken by prison authorities are presumed to be legal and constitutional), cert. denied, 506 U.S. 855, 113 S.Ct. 163, 121 L.Ed.2d 111 (1992).

The burden is on Plaintiff to prove that but for an unconstitutional, retaliatory motive, Deputy Tims would not have used hands-on contact against him. In this case, Plaintiff admits that when Deputy Tims opened the food port of his cell, he "stuck [his] left leg out of the 5X9 inch food trap door hole, as protest for the deputy Tims to have to call his superiors for assistance in addressing the issue of my left leg being stuck out the 5 X 15 inch food trap door hole." See Plaintiff's Complaint, Doc. No. 2, page 2. Thus, Plaintiff's own actions prompted the incident at issue in this lawsuit. Plaintiff admits that he was "protesting" by putting his leg through the food port and demanding to see Deputy Tims's supervisor. Plaintiff refusing to allow Deputy Tims to

provide Plaintiff's lunch through the food port, and thereafter refusing to close the food port of his cell disrupted the safety and order of the facility. Should Plaintiff have "feared" Deputy Tims and not wanted Deputy Tims around him, as he alleges within his Complaint, Plaintiff could have simply accepted his lunch tray from Deputy Tims and allowed Deputy Tims to close the food port, thereby ending the encounter. However, Plaintiff chose to carry on his "protest" (and prolong his encounter with Deputy Tims) by refusing multiple lawful orders to close the food port. Deputy Tims gave Plaintiff numerous verbal orders, over the course of several minutes, to remove his extremities from the food port so that Deputy Tims could close the food port and secure Plaintiff within his cell, but Plaintiff refused. After Deputy Tims opened Plaintiff's cell door and ordered Plaintiff to return to his cell, Plaintiff refused and continued to keep his extremities through the food port to prevent it from closing. Deputy Tims used only minimal force that was reasonably necessary to secure Plaintiff within his cell with the food port closed. Deputy Tims's use of force was not connected to Plaintiff's filing of a PREA complaint, but rather was directly connected to Plaintiff's self-proclaimed "protest," during which Plaintiff stuck his extremities through the food port of his cell and refused to be secured within his cell, thereby disrupting the safety and order of PCRDF. Plaintiff cannot show that the use of force would not have occurred "but for" some impermissible retaliation. His claim, therefore, fails. See *Goff v. Burton*, 7 F.3d 734, 737-38 (8th Cir. 1993).

Finally, in light of the deference properly afforded the decisions of prison authorities on matters of safety and proper administration of facilities, Deputy Tims's minimal use of force was not unconstitutional. This is so because the minimal use of force was "reasonably related to legitimate penological interests" separate and apart from any purpose to retaliate. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (applying standard

to prisoners' religion claim), quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (applying standard to prisoners' free speech and association claims).

Here, Plaintiff's claim must fail, as it was proper for Deputy Tims to use minimal, hands-on contact in the interest of safety and security of PCRDF. Plaintiff's actions continued to disrupt the order of the facility. As Deputy Tims attempted to serve lunch to inmates, Plaintiff stuck his leg through the food port as soon as Deputy Tims opened it. Deputy Tims gave Plaintiff multiple verbal orders to put his extremities back in his cell, however, Plaintiff refused to do so and continued to demand to speak with a supervisor. When Deputy Tims opened Plaintiff's cell door, Plaintiff continued to hang from his cell door with his arms and legs through the food port. Any adverse effect on Plaintiff was not sufficient to preclude using minimal force against Plaintiff who admits that he was "protesting" by refusing lawful orders and refusing to be secured within his cell. Deputy Tims's use of minimal hands-on contact was based on those legitimate penological interests of keeping the detention facility secure and orderly. Plaintiff was not retaliated against for the filing of a PREA complaint when Deputy Tims used minimal hands-on contact to remove Plaintiff from the food port during Plaintiff's self-admitted "protest."

Plaintiff cannot establish that Deputy Tims's use of minimal hands-on contact was retaliation. Defendant Deputy Tims did not use force against Plaintiff in retaliation for Plaintiff filing a PREA complaint. Pulaski County Defendant Deputy Tims is entitled to judgment as a matter of law.

**B.     Pulaski County Defendant Deputy Tims did not subject Plaintiff to excessive force.**

Plaintiff alleges that he was subjected to excessive force during his incarceration within the Pulaski County Regional Detention Facility on or about March 21, 2021. Plaintiff's Complaint alleges:

> The next morning I was exposed to the same perpetrator of the sexual harassment, the Deputy Tims against me where fore I protested his very presence around me because I was very uncomfortable and afraid with his presence "anywhere near me" in my sight and over my welfare and life the deputy Tims opened the food trap door of the cell room that I was in the food trap hole is about 5 x 15 inches long accordingly I stuck my left leg out of the 5X9 inch food trap door hole, as protest for the deputy Tims to have to call his superiors for assistance in addressing the issue of my left leg being stuck out the 5 X 15 inch food trap door hole. Subsequentially the Deputy Tims maliciously, recklessly, intentionally inflected excessive unnecessary physical force against I Parnell May. I was injured and suffered pain in my left leg, knee and back after the blatant actions of the Deputy Tims by inflicting excessive unnecessary physical force against I Parnell May. See Plaintiff's Complaint, Doc. No. 2, page 2.

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979)("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth Amendment's prohibition against objectively unreasonable use of force, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. *Graham v. Connor*, 490 U.S. 386, 394 (U.S. 1989) (citing *Whitley v. Albers*, 475 U.S. 312, 318-326 (1986)).

At the time of the alleged use of force, Plaintiff was a pretrial detainee. "Because [Plaintiff] was a pretrial detainee at the time of the alleged violation of [his] constitutional rights, we analyze

[his] claim against [Defendant] under the Fourteenth Amendment, rather than the Eighth

Amendment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (citations omitted). Therefore,

the objective reasonableness standard should be used in the analysis of Plaintiff's excessive force

claim. See *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). The Eighth Circuit

Court of Appeals noted:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees].
> *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447
> (1979). Their confinement conditions are analyzed under the due process clause of
> the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel
> and unusual punishment" standard which is used for convicted prisoners. *Id*. The
> injuries detainees suffer must be necessarily incident to administrative interests in
> safety, security and efficiency. Constitutionally infirm practices are those that are
> punitive in intent, those that are not rationally related to a legitimate purpose or
> those that are rationally related but are excessive in light of their purpose. *Id*. at
> 538, n. 20.

*Johnson-El v. Schoemehl*, 878 F.2d at 1048. The evaluation of excessive-force claims

brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rely on

the same objective reasonableness standard as arrestee claims grounded in the Fourth Amendment.

*Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) (citing *Schoemehl*, 878 F.2d at 1048-9). The

use of force must be necessary to some legitimate institutional interest such as safety, security, or

efficiency, and the force used must not be in excess of that reasonably believed necessary to

achieve those goals. See *Schoemehl,* 878 F.2d at 1048. The relevant inquiry being whether the

officials acted in an objectively reasonable manner in light of the facts and circumstances

confronting them without regard to their underlying intent or motivation. See *Graham v. Connor*,

490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Court should consider the

reasonableness "from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight." *Id.* at 396. Finally, the Court should consider whether the totality of the

circumstances justifies the use of force. *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076,

1081 (8th Cir. 1990).

"[N]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). The Supreme Court addressed the legal standard applicable to pretrial detainee excessive force claims holding "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015). The Kingsley Court noted:

> [O]bjective reasonableness turns on the "facts and circumstances of each particular case. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. See ibid. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgement" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Kingsley Court went on to offer a non-exhaustive list of considerations that may bear on the reasonableness analysis of force used:
> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. (citing Graham, 490 U.S. at 396).

"[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action," a *de minimus* application of force will not give result in a constitutional violation. *Hudson*, 503 U.S. at 9; see also *Wilkins*, 590 U.S. at 37-38 ("An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim.") "[U]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain ... the case should not go to the jury." *Johnson v. Bi-State J. Ctr./Arkansas Dept. of Corrections*, 12 F.3d 133, 136 (8th Cir. 1993).

In the present case, Plaintiff complains that Defendant Deputy Tims used excessive force against him on March 21, 2021. The issue at hand began when Plaintiff stuck his leg out of his cell's food port when Deputy Tims opened the food port to serve Plaintiff lunch. Plaintiff refused multiple verbal orders from Deputy Tims to put his extremities inside the food port, and thereafter Deputy Tims opened Plaintiff's cell door in an attempt to secure Plaintiff inside his cell. When Plaintiff removed his extremities from the food port of his cell door, Plaintiff then left his assigned cell against the orders of Deputy Tims.

While in many cases alleging the use of excessive force, a material disputed fact demands a jury trial, in this case, the encounter is captured on video tape. This provides conclusive evidence of the facts for the court to consider. In *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007), the U.S. Supreme Court held that when a videotape capturing the events in question exists, then the Court must consider the videotape in review of the facts for summary judgment. *Id*. at 378. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (U.S. 2007). In the instant lawsuit, the video at issue shows that Deputy Tims used only force that was reasonably necessary to gain Plaintiff's compliance and order within the facility. Footage from the alleged excessive force incident was captured on the body camera of Deputy Tims and the camera in the sub-day area of T-Unit. See Statement of Indisputable Material Facts, Exhibit A7, Video Footage.

Camera in T-unit 2f rear sub-day at time stamp 11:07:27.981 shows Deputy Tims walking up to cell 415 with a food tray. Deputy Tims opens the food port, then walks back to a cart to grab a food tray. At this time, Plaintiff sticks his leg out of the food port. At 11:07:49.340, Deputy Tims

attempts to put Plaintiff's leg back through the food port. Deputy Tims then tries to straighten Plaintiff's leg to get it back through the food port, but Plaintiff actively pushes his leg against Deputy Tims while holding onto the food port with his hands to help push against Deputy Tims, which continues until 11:12:22.968. Once the cell door is opened, Plaintiff wraps his arm around the outside of the door and hangs onto the door. Deputy Tims attempts to remove Plaintiff's hand from the door. At 11:13:04.344, Deputy Tims gets Plaintiff's arm off of the door and holds them behind his back while still trying to remove Plaintiff's leg from the food port. Deputy Tims turns on his body camera, which is timestamped at 16:12:46. At 16:13:29, Deputy Tims asks Plaintiff numerous times to go back into the cell and is concerned that Plaintiff is going to hurt his leg. At 11:13:21.378, Plaintiff still has his leg in the food port. Plaintiff yells that he wants Deputy Tims to call a supervisor so that he can file a PREA complaint against Deputy Tims at 16:13:31. Deputy Tims is still attempting to remove Plaintiff from the food port, but Plaintiff is hanging onto the food port with his leg and arms. Plaintiff continues yelling for Deputy Tims to call a supervisor so that he can file a PREA complaint and an excessive force complaint. At 11:16:16.611, Deputy Tims removes Plaintiff from the food port and cell door, and Plaintiff scoots away from Deputy Tims. Deputy Tims asks Plaintiff to go back into his cell repeatedly, 16:16:22. Deputy Tims then goes back to the cell to close and lock the food port, and Plaintiff scoots to the other side of a glass wall. Plaintiff continues to yell for Deputy Tims to call his supervisor so that he can file a charge against him. At 16:18:02, Deputy Tims radios for assistance. At 16:18:53, additional PCRDF personnel respond to the Unit to assist Deputy Tims, including Sergeant Connors. Plaintiff then complies with orders to return to his cell, at which time Plaintiff gets up from the floor and walks back to his cell. Plaintiff yells that he needs protection from Deputy Tims. At the end of the body camera footage, Sergeant Connors states that he is going to talk to Deputy Tims. The rear sub-day

camera shows that Plaintiff was back in his cell at 11:19:22.425. After this point, PCRDF

personnel are outside of Plaintiff's cell, and appear to be speaking with one another. The encounter

at issue in this lawsuit lasted less than 15 minutes. See Statement of Indisputable Material Facts,

Exhibit A7, Video Footage.

On March 21, 2021, Deputy Kawhun Tims completed an incident report, stating:

"During feeding I attempted to serve Inmate May, Parnell (22568-16) and he stuck his leg out of the food port. I gave Inmate Parnell three direct orders to put his leg back in the food port. He stated that he needed to talk to a Sergeant. I attempted to push his leg back through the food port by placing my hands on his leg by pushing forward. He used force by moving his leg toward me. I opened the inmate's door to get his leg out of the food port. I attempted to take his leg out of the food port by placing my hand on his upper shoulders and pulling him away out the food trap. As I got him half way out of the trap, he continued to hold on to the door causing himself to be upside down. As I secured his food port he crawled out of the cell and out the upper back sub day area. I instructed Inmate May to go back to his cell which he didn't comply. Sergeants Connors and Ezell arrived along with Deputy Middleton to help walk Inmate May back to his cell. Medical personnel arrived to the unit, assessed and cleared Inmate May to remain in the unit. Nothing further to report."

See Statement of Indisputable Material Facts, Exhibit A4, Incident Reports, page 142.

Sgt. Connors also completed an incident report, stating:

"I (Sergeant J. Connors) was informed by T-Booth Deputy Hibbs to 10-19 (En Route To) to T-Unit. Upon my arrival, I noticed Inmate May, Parnell sitting on the floor. I instructed Inmate May to get off the floor and walked back to his cell. Inmate May complied with my direct order. Responding personnel and I walk Inmate May back to his cell and secured the cell door. Sergeant Ezell was on scene, so I left the Unit. No further incident to report at this time."

See Statement of Indisputable Material Facts, Exhibit A4, Incident Reports, page 144.

Here, Plaintiff disrupted the order of the facility and refused to comply with Deputy Tims's

lawful orders to put his extremities within his cell so that he could receive his lunch tray and then

be secured within his cell. See Statement of Indisputable Material Facts, Exhibit B, Affidavit of

Deputy Tims. Deputy Tims gave Plaintiff multiple lawful orders to put his extremities within the

food port so Deputy Tims could move forward with feeding the other detainees within the Unit. Plaintiff refused to comply and refused to be secured within his cell. Although Plaintiff alleges that he was "uncomfortable and afraid with [Deputy Tims's] presence," Plaintiff's actions and refusal to obey orders only prolonged his contact with Deputy Tims. When Deputy Tims attempted to remove Plaintiff's leg from the food port, Plaintiff resisted and pushed back against Deputy Tims. See Statement of Indisputable Material Facts, Exhibit B, Affidavit of Deputy Tims. Deputy Tims then unlocked Plaintiff's cell door, at which point Plaintiff hung from the food port. *Id.* Deputy Tims asked Plaintiff numerous times, over the course of several minutes, to let go of the food port. *Id.* However, Plaintiff continually refused Deputy Tims's orders. Once Plaintiff let go of the food port, Plaintiff was out of his assigned cell and disrupted the order of PCRDF and created a security risk by being out of his assigned cell. *Id.* Deputy Tims then locked Plaintiff's food port, during which time Plaintiff scooted away from him on the floor. Deputy Tims used appropriate force to gain control over Plaintiff after his continued refusal to be secured within his cell. The need to maintain safety and security within PCRDF is a legitimate penological interest, and an inmate that disrupts lunch service, demands to speak with supervisors at his convenience, refuses orders to be secured within his cell, and thereafter leaves his assigned cell creates a substantial risk of harm to himself or others within the facility. Therefore, Deputy Tims acted reasonably under the circumstances to prevent Plaintiff from potentially harming him or those around him due to his refusal to be secured within his cell.

Deputy Tims followed his training. Pulaski County Regional Detention Facility personnel are trained in the lawful use of force. PCRDF follows the standard Use of Force Continuum by which a deputy is trained to use the option that represents the minimal amount of force necessary to reduce the immediate threat presented by the actions of the subject. According to the Use of

14

Force Continuum, when the subject is obedient, compliant, and non-aggressive, the officer should not use force. When the subject is resisting and non-compliant, the officer may use a moderate or limited amount of force such as physical control with his/her hands. Here, Deputy Tims used multiple verbal orders for Plaintiff to put his leg inside his cell so the food port could be secured. However, Plaintiff failed to comply with orders and refused to do so. Use of hands/physical touch in this manner is considered "limited force" on the use of force continuum. Such limited force is appropriate when the subject is non-compliant. Plaintiff refused to be secured within his cell. Deputy Tims did not use unnecessary force, but used the minimal amount of force necessary to secure Plaintiff within his cell. The force used by Deputy Tims was consistent with his training, and was the minimal force reasonably believed necessary to respond to the perceived threat created by Plaintiff.

Finally, Plaintiff has not shown that he suffered any physical injury. While the evidence of only a *de minimus* injury is not necessarily dispositive on the issue, see *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011), the degree of injury is certainly relevant insofar as it tends to show the amount and type of force used. *Id. See also Cook v. City of Bella Villa,* 582 F.3d 840, 850 (8th Cir.2009); *Cavataio v. City of Bella Villa,* 570 F.3d 1015, 1020 (8th Cir.2009); *Curd v. City Court,* 141 F.3d 839, 841 (8th Cir.1998); *Greiner v. City of Champlin,* 27 F.3d 1346, 1355 (8th Cir.1994); *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir.1990). May's *de minimus* injury, if any injury at all, is further evidence that the limited force used by Defendant Tims was reasonable in light of the circumstances with which he was presented.

Plaintiff had only *de minimus* injury, if any injury at all, from the alleged excessive force incident. Plaintiff has failed to prove that the alleged excessive force incident caused him any injury. After the encounter at issue in this lawsuit, PCRDF medical personnel responded and

15

provided Plaintiff Ibuprofen for his complaints of pain. See Statement of Indisputable Material Facts, Exhibit A3, Jail Medical File Information, page 418. Plaintiff later submitted multiple medical requests regarding knee and back pain allegedly resulting from the March 21, 2021 incident at issue this lawsuit. PCRDF medical personnel prescribed Plaintiff medications to treat his complaints of pain, including Tylenol, Ibuprofen, Robaxin, and Methocarbamol over approximately a month following the March 21, 2021 incident. See Statement of Indisputable Material Facts, Exhibit A3, Medical File, page 324, 335, 415, 418. There is no indication by PCRDF medical personnel that Plaintiff suffered any serious injury to his back or knee. Plaintiff has failed to meet his burden of proving medical causation. Plaintiff must meet proof with proof, and Plaintiff has failed to establish a prima facie case. Pulaski County Defendant Deputy Tims is entitled to judgment as a matter of law.

**C.      Pulaski County Defendant Sgt. Connors did not fail to protect Plaintiff.**

Plaintiff was not subjected to excessive force by Defendant Deputy Tims, and therefore, there can be no finding of failure to protect against Defendant Sgt. Connors regarding the March 21, 2021 incident. Should Point B (supra), not be dispositive of Plaintiff's failure to protect claim against Defendant Sgt. Connors, Defendant Sgt. Connors denies that he failed to protect Plaintiff.

Plaintiff alleges that Defendant Sgt. Connors failed to protect him because he failed to intervene during the alleged excessive force incident involving Deputy Tims on March 21, 2021. Plaintiff's Complaint alleges:

> "…where that it was observed that the Sergeant Conners had began to ignore I Parnell May and started to give clear support to the Deputy Tims the Sergeant Conners began to joke and condone force against I while I kept asking for medical assistance. It is very obvious and reasonable to believe that the Sergeant Conners had knew about my PREA complaint against Deputy Tims of sexual harassment that I had made and submitted the night before…" Doc. No. 2, page 5.

16

In addressing failure to protect claims brought by pretrial detainees, the United States Court of Appeals for the Eighth Circuit has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. See *Perkins v. Grimes*, 161 F.3d 1127, 1129-130 (8th Cir. 1998); see also *Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005) (analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by convicted prisoners); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(same).

> In *Riley v. Olk Long*, 282 F.3d 592 (8th Cir. 2002), the appeals court stated:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.*, 260 F.3d 901, 906 (8th Cir. 2001)(internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer*, 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838 39; see also *Jackson*, 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer*, 511 U.S. at 837.

> *Riley*, 282 F.3d at 595; see also *Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002).

Thus, to prevail on his failure to protect claim, Plaintiff must show: (1) that his incarceration posed a substantial risk of serious harm, and (2) the Defendant knew of and disregarded an excessive risk to his safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). To establish the second component, Plaintiff must show that Defendant acted, or failed to act, with

deliberate indifference to his safety. *Id.* Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Plaintiff must have placed the Defendant "on notice" that particular inmates posed a threat of serious injury to him. *Perkins* at 1130. Moreover, Plaintiff must allege "personal involvement" on the part of each individually named defendant. See *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir. 2007) (no respondeat superior liability under § 1983, and no liability merely because an official employs the individual who allegedly violated the plaintiff's constitutional rights); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."); *Mark v. Nix*, 983 F.2d 138, 139 40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

"[A]n officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011)(citing *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir. 2009), *cert. denied,* 562 U.S. ——, 131 S.Ct. 69, 178 L.Ed.2d 23 (2010)). A plaintiff must prove that "the officer observed or had reason to know that excessive force would be or was being used." *Id.* (quoting *Floyd v. City of Detroit,* 518 F.3d 398, 406 (6th Cir. 2008)).

Plaintiff alleges that Defendant Sgt. Connors failed to protect him when he did not intervene during an alleged excessive use of force by Deputy Tims. However, Deputy Tims did not use excessive force against Plaintiff, and therefore, Plaintiff cannot meet the threshold that Sgt. Connors observed or had reason to know that excessive force was being used.

However, even should the Court find that Plaintiff was subjected to excessive force, Sgt. Connors did not fail to protect Plaintiff, as Sgt. Connors did not observe, or have reason to know that excessive force would be or was being used against Plaintiff

Sgt. Connors completed an incident report concerning the March 21, 2021 incident, stating:

"I (Sergeant J. Connors) was informed by T-Booth Deputy Hibbs to 10-19 (En Route To) to T-Unit. Upon my arrival, I noticed Inmate May, Parnell sitting on the floor. I instructed Inmate May to get off the floor and walked back to his cell. Inmate May complied with my direct order. Responding personnel and I walk Inmate May back to his cell and secured the cell door. Sergeant Ezell was on scene, so I left the Unit. No further incident to report at this time."

See Statement of Indisputable Material Facts, Exhibit A4, Incident Reports, page 144.

Here, when Sgt. Connors arrived to the scene of the alleged excessive force incident, Plaintiff was crawling out of the upper sub-day area and sitting on the floor of T-Unit. See Statement of Indisputable Material Facts, Exhibit C, Affidavit of Sgt. Connors. Sgt. Connors did not witness any excessive use of force. *Id.* Plaintiff was ordered to return to his cell, and Plaintiff got up from the floor and walked to his cell. *Id.* Once Plaintiff was in his cell, Sgt. Connors secured Plaintiff in his cell without incident. *Id.* Sgt. Connors does not recall Plaintiff stating that he was injured, and Plaintiff did not appear to be injured. *Id.* However, in accordance with protocol, medical personnel responded to the scene. *Id.* At this time, Sgt. Ezell arrived on scene and took over the situation, and Sgt. Connors left the Unit after being on scene for no longer than 10 minutes. *Id.* Sgt. Connors did not witness Deputy Tims use excessive force against Plaintiff. *Id.*

There was no evidence that Deputy Tims had used excessive force, or that he would use excessive force from what Sgt. Connors observed. Further, Sgt. Connors had no knowledge that Plaintiff had filed a PREA Complaint against Deputy Tims. See Statement of Indisputable Material Facts, Exhibit C, Affidavit of Sgt. Connors. Sgt. Connors had no reason to know that excessive force would be used or was being used against Plaintiff. *Id.*

19

Sgt. Connors did not witness any excessive use of force by Deputy Tims. Therefore, there was nothing for Sgt. Connors to intervene in and nothing for Sgt. Connors to protect Plaintiff from. Rather, when Sgt. Connors arrived at T-Unit, Plaintiff was crawling and sitting on the floor of the sub-day area. Plaintiff was ordered to return to his cell, which Plaintiff did. Plaintiff did not appear injured during this time. Sgt. Connors had no reason to know that excessive force was being used or would be used against Plaintiff. Sgt. Connors was not aware that Plaintiff had filed a PREA Complaint against Deputy Tims. Sgt. Connors was not aware of any issue between Plaintiff and Deputy Tims.

Based on the foregoing, it is undisputed that Defendant Sgt. Connors did not have notice that Plaintiff was at a substantial risk of serious harm, and Defendant Sgt. Connors's actions were not deliberately indifferent to Plaintiff's safety. Based on the evidence, Pulaski County Defendant Sgt. Connors is entitled to judgment as a matter of law.

### D.      Pulaski County Defendants are entitled to qualified immunity.

"In a § 1983 action, state actors may be entitled to qualified immunity." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir.2009) (citation omitted). Qualified immunity may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir.2005).

Qualified Immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), *Brown v. Nix*, 33 F.3d 951, 953 (8th Cir. 1994). Qualified immunity is designed to "protect officials from the disruptions of going to trial as well

as from liability for money damages. . . [i]t is important for public officials to be shielded from the burden of trial on insubstantial claims." *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 202-03 (8th Cir. 1986). Accordingly, the Court generally should rule upon the defense "at the earliest possible time." *Id.*

In deciding the qualified immunity question, the court should "ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable or more reasonable interpretation of the events can be constructed ...." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for qualified immunity is an objective one. *Id*. Officials should not have to always err on the side of caution out of a fear of being sued. *Id.* at 229. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986).

In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the U.S. Supreme Court held that there are two prongs to a qualified immunity analysis. A court must consider both whether a constitutional right has been violated and whether that right had been clearly established at the time of the alleged violation. The Court held in *Pearson*, that, while often appropriate, is not mandatory to consider these issues in any particular sequence. Under *Pearson*, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818 (overruling, in part, in *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In this case, the Plaintiff has failed to prove a constitutional violation by Pulaski County Defendants. Therefore, Pulaski County Defendants are entitled to the protections of qualified immunity.

## IV.   CONCLUSION

In *Celotex v. Catrett*, 477 U.S. 317 (1986), the seminal case on interpreting the federal summary judgment rule, F.R.C.P. 56(c), the Supreme Court carefully explained that a party seeking summary judgment always has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." The *Celotex* Court held ultimately that the movant need not submit supporting affidavits in order to prevail if he can show from the other material on file the absence of a genuine issue of material fact. The case may properly be cited for the proposition that a party moving for summary judgment may shift the burden of proof by showing that the plaintiff will be unable to offer any proof on an essential element of his case (generally referred to as the "scintilla rule"). The Court, in reaching its conclusion, explained that its holding in *Adickes v. Kress*, 398 U.S. 144, a 1970 case which construed Rule 56(c), did not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof, but instead, the moving party may discharge its burden by pointing out to the district court that "there is an absence of evidence to support the non-moving party's case." The movant may carry its burden "with or without supporting affidavits." See *Celotex* supra. It is the non-movant who must go beyond the pleadings and by affidavit, depositions

22

or other *substantive* evidence designate specific facts showing that there is a genuine issue for trial. *Id.* (Emphasis added).

Plaintiff has failed to show a constitutional violation in this case. Plaintiff has failed to prove that Pulaski County Defendant Deputy Tims retaliated against him or subjected him to excessive force. Further, Plaintiff has failed to prove that Pulaski County Defendant Sgt. Connors failed to protect him. Pulaski County Defendants are entitled to qualified immunity and judgment in their favor as a matter of law.

Respectfully submitted,

DEPUTY TIMS and SGT. CONNERS, in their individual capacities only, Pulaski County Defendants

Melissa K. Dugger, Ark. Bar No. 2017150
ASSOCIATION OF ARKANSAS COUNTIES
RISK MANAGEMENT SERVICES
Attorney for Pulaski County Defendants
1415 W. Third Street
Little Rock, Arkansas 72201
Telephone: (501) 375-8805
Fax: (501) 375-8671
Email: mdugger@arcounties.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, and I mailed the document by United States Postal Service to the following non-CM/ECF participant:

Mr. Parnell R. May
ADC #153557
Cummins Unit
P.O. Box 600
Grady, AR 71644

I hereby certify that on June 24, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which shall send notice to the following CM/ECF participant:

Alexandra G. Ah Loy
allie@sweetlawfirm.com

     /s/Melissa K. Dugger
    Melissa K. Dugger, Bar No. 2017150
    Attorney for Pulaski County Defendants